IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 25, 2017 at Knoxville

**STATE OF TENNESSEE v. JAMARIUS DEON GANT**

**Appeal from the Circuit Court for Madison County**
**No. 15-487        Kyle C. Atkins, Judge**

_____

**No. W2016-02482-CCA-R3-CD**

_____

The Defendant, Jamarius Deon Gant, was convicted by a Madison County Circuit Court
jury of aggravated robbery, a Class B felony, aggravated kidnapping, a Class B felony,
and facilitation of burglary of a vehicle, a Class A misdemeanor. *See* T.C.A. §§ 39-13-
402 (2014) (aggravated robbery), 39-13-304 (2014) (aggravated kidnapping), 39-11-403
(2014) (facilitation of a felony), 39-14-402 (2014) (burglary of a vehicle). The
Defendant also pleaded guilty to two counts of possession of a handgun by a convicted
felon. *See* T.C.A. §§ 39-17-1307 (2014) (amended 2017). The trial court sentenced the
Defendant as a Range I, standard offender to consecutive nine-year terms for the
aggravated robbery and aggravated kidnapping convictions. The Defendant received
concurrent sentences of four years for the firearm convictions and eleven months, twenty-
nine days for the facilitation of burglary of a vehicle, for an effective eighteen years'
confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to
support a conviction for aggravated kidnapping, and (2) the trial court erred during
sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E.
GLENN and J. ROSS DYER, JJ., joined.

John D. Hamilton (on appeal) and Susan D. Korsnes (at trial), Jackson, Tennessee, for the
appellant, Jamarius Deon Gant.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant
Attorney General; Jody S. Pickens, District Attorney General; and Aaron A. Chaplin,
Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

This case arises from an incident at Jessica Spencer's apartment in Jackson, Tennessee, on the night of March 30, 2015. Ezikeal Scott testified that he and Ms. Spencer went to dinner that night and returned to her apartment. Mr. Scott stated that he sat on the couch in the living room and that Ms. Spencer went to her bedroom. Mr. Scott said that a man, later identified as the Defendant, came into the living room from the back of the apartment and sat down on the couch. Mr. Scott stated that the Defendant inquired about Mr. Scott's Ford Mustang, which was parked outside, and that Mr. Scott told the Defendant the Mustang was for sale. Mr. Scott said that the Defendant told him he had a gun for sale and showed Mr. Scott a revolver.

Mr. Scott testified that he heard a knock at the door, that Ms. Spencer told the Defendant to answer the door, and that a man, who was unknown to Mr. Scott, came into the apartment. Mr. Scott said that Ms. Spencer was in the bathroom when the man arrived. Mr. Scott stated that the man sat down on the couch beside him and that the Defendant stood behind the couch. Mr. Scott said that a second man, also unknown to Mr. Scott, entered the apartment. The man wore a ski mask that covered his face and held a handgun. Mr. Scott said that the masked man attempted to load the handgun with a bullet and that another bullet fell from the handgun's chamber onto the floor.

Mr. Scott testified that the Defendant ordered Mr. Scott to the back of the apartment and that the first unknown man escorted Mr. Scott. Mr. Scott stated that the Defendant came into the back room and told the first unknown man to "check him for anything that [he] had" and that the first unknown man began searching Mr. Scott's shirt and pants.

Mr. Scott testified that they escorted him to the living room and that the Defendant and the man wearing a mask ordered Mr. Scott to remove his clothing, his wallet and money, and to lie face-down on the floor. Mr. Scott stated that the masked man pointed a gun at him as he undressed and that he felt threatened. Mr. Scott said that he lay face down on the floor when the men brought Ms. Spencer into the living room. Mr. Scott stated that he and Ms. Spencer were ordered to sit on the couch.

Mr. Scott testified that the Defendant told the other two unknown men to go to Mr. Scott's Mustang and that the Defendant stayed with Mr. Scott and Ms. Spencer inside the apartment. Mr. Scott said that the unknown men returned with three televisions, cologne, and cell phones, which they had retrieved from Mr. Scott's Mustang. Mr. Scott stated that the Defendant and the men took his wallet, money, and another cell phone from Mr. Scott's pants pocket. Mr. Scott said that the masked man asked him if he wanted to see Ms. Spencer raped and that Mr. Scott replied, "No." Mr. Scott stated that the unknown men left the apartment and that the Defendant told the men to "call . . . when you get to where you're going."

Mr. Scott testified that the Defendant remained in the living room with the revolver. Mr. Scott stated that the Defendant told him that he could not leave until the unknown men "got to where they were going." Mr. Scott said that the Defendant instructed him not to report the incident to the police. Mr. Scott stated that the Defendant allowed him to leave after approximately five minutes but that Ms. Spencer remained in the apartment. Mr. Scott stated that he drove his Mustang home. He said that his mother contacted the police, that he gave the police a statement, and that he gave the police a description of the Defendant, who was wearing red clothing. Mr. Scott stated that he identified the Defendant in a photograph lineup.

On cross-examination, Mr. Scott testified that during the preliminary hearing, he mistakenly stated that no one other than the masked man was armed. He said the Defendant had a gun. On redirect examination, Mr. Scott stated that he "was being held like [he] couldn't move." He stated that before the Defendant allowed him to leave the apartment, the Defendant told him, "Don't call the police, I got your I.D."

Tamator Scott, Mr. Scott's mother, testified that her son was "scared" when he arrived home and that he was wearing only underwear. Ms. Scott stated that she saw her son's Mustang and that all of the televisions from the car had been removed. Ms. Scott said that she and her boyfriend drove to Ms. Spencer's apartment, that they "beat on the door," and that they called the police because they thought Ms. Spencer was being held hostage.

Jackson Police Officer Jonathan McCrury testified that he went to a possible hostage situation at Ms. Spencer's apartment. Officer McCrury said that when he arrived, he spoke with Ms. Scott and followed Ms. Scott to her home. Officer McCrury said that Mr. Scott was present at the home and was "visibly upset [and] afraid." Officer McCrury stated that he took Mr. Scott's statement and told officers to go to Ms. Spencer's apartment. Officer McCrury said that Mr. Scott told him about the items stolen from his Mustang.

Jackson Police Officer Christopher Austin testified that he went to Ms. Spencer's apartment, that he and other police officers spent approximately ten to fifteen minutes trying to get into Ms. Spencer's apartment, and that he contacted the Jackson Housing Authority to gain access. Officer Austin said that the Jackson Housing Authority granted the officers access and that the officers performed a "protective sweep." Officer Austin said that the officers found a bullet and a wallet on the floor but that no one was in the apartment.

Jackson Police Sergeant Brian Spencer testified that a form with Ms. Spencer's photograph and personal information was prepared and that it was distributed door-to-door in a search for Ms. Spencer. Sergeant Spencer stated that he composed a photograph lineup and that Mr. Scott identified the Defendant in the lineup.

Jackson Police Investigator Daniel Long testified that he requested an "emergency ping" of Ms. Spencer's cell phone by the service provider. He stated that he received the ping information and narrowed Ms. Spencer's location to approximately ten units in Ms. Spencer's apartment complex. He said that police officers searched the area, knocked on doors, and entered apartments. Investigator Long stated that the Defendant and Ms. Spencer were found in one of the apartments and were detained.

Jatori Marie Bradford testified that she lived in the apartment in which the Defendant and Ms. Spencer were found. Ms. Bradford said that Ms. Spencer sent her a text message on the night of March 30, 2015, requesting Ms. Bradford open her door and allow them to enter her apartment. Ms. Bradford said that Ms. Spencer and the Defendant came into her apartment and that they stayed until the next day.

Ms. Bradford testified that she left her apartment the next morning, that she spoke with police officers, and that she did not tell the officers that Ms. Spencer was in her apartment. Ms. Bradford said that she left a second time and that when she returned, police officers were in her apartment. Ms. Bradford identified the Defendant from a photograph lineup as the person who stayed in her apartment with Ms. Spencer.

Jessica Spencer testified that she had known the Defendant for a few months at the time of the incident and that he lived in her apartment. She said that when she and Mr. Scott went inside her apartment, she went to the bathroom to take a shower. Ms. Spencer said that she heard "bumping and thumping" outside the bathroom. Ms. Spencer stated that when she opened the bathroom door, the masked man held a handgun to her face.

Ms. Spencer testified that the masked man escorted her into the living room and that Mr. Scott lay face-down on the floor wearing boxers, an undershirt, and socks. Ms. Spencer stated that it appeared "they had already robbed [Mr. Scott]." Ms. Spencer said that the other two men left the apartment and that the Defendant told Mr. Scott that he could not leave until the Defendant received a telephone call. Ms. Spencer stated that she saw two firearms belonging to the Defendant and that one was a revolver.

Ms. Spencer testified that after Mr. Scott left her apartment, she went to Ms. Bradford's apartment. Ms. Spencer said that the Defendant followed her into Ms. Bradford's apartment and that they stayed until the next day when the police took her and the Defendant into custody. Ms. Spencer said that she did not know the robbery was going to take place and denied receiving any items from the robbery.

On cross-examination, Ms. Spencer testified that she had not been charged in relation to the incident. Ms. Spencer admitted that in a previous statement, she did not tell police officers that the Defendant held Mr. Scott hostage in the living room. Ms. Spencer said that the Defendant never kidnapped her or threatened to harm her. Ms. Spencer said that she was afraid of the Defendant after the robbery and that he had her

cell phone and would not allow her to call anyone.

Jackson Police Officer Joseph Cepparulo testified that when he searched Ms. Bradford's apartment, he found the Defendant lying in a bathtub. Officer Cepparulo said that he found a plastic bag hidden in the toilet tank and that the bag contained a semi-automatic handgun and a revolver.

Upon this evidence, the Defendant was convicted of aggravated robbery, aggravated kidnapping, and facilitation of burglary of a vehicle. This appeal followed.

## I. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain a conviction for aggravated kidnapping. He does not challenge his remaining convictions. He argues that the confinement of Mr. Scott was "essentially incidental" to accomplishing the robbery and that as a result, the aggravated kidnapping conviction should be vacated pursuant to *State v. White*, 362 S.W.3d 559 (Tenn. 2012). The Defendant argues that Mr. Scott's confinement did not interfere substantially with his liberty beyond that required for the aggravated robbery and vehicle burglary. The State responds that the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). A conviction may be based upon circumstantial evidence alone. *See Dorantes*, 331 S.W.3d at 380-381.

Aggravated kidnapping is defined as false imprisonment committed "while the defendant is in possession of a deadly weapon . . . ." T.C.A. § 39-13-304. False imprisonment occurs when a person "knowingly removes or confines another unlawfully

so as to interfere substantially with the other's liberty." *Id*. § 39-13-302 (2014). In *White*, our supreme court held that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law." 362 S.W.3d at 577 (internal citations omitted). Trial courts have the obligation to provide clear guidance to the jury with regard to statutory language and must "ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *Id*. at 578.

In the light most favorable to the State, the evidence shows that once the two men, unknown to Mr. Scott, entered the apartment, the Defendant displayed a revolver and ordered Mr. Scott to go from the living room to the back of the apartment where Mr. Scott was searched. The Defendant and the masked man ordered Mr. Scott to return to the living room, to remove his clothing, and to lie face down on the floor. The men took Mr. Scott's wallet, money, and cell phone from Mr. Scott's pants pocket. The Defendant ordered Mr. Scott to sit on the living room couch while the two unknown men removed items from Mr. Scott's Mustang.

After the two unknown men left Ms. Spencer's apartment and the aggravated robbery and vehicle burglary were complete, the Defendant remained inside the apartment with Mr. Scott and Ms. Spencer. The Defendant held a revolver and did not permit Mr. Scott to leave the apartment until the Defendant received a telephone call. The Defendant detained Mr. Scott inside the apartment for several minutes before allowing Mr. Scott to leave.

We conclude that the evidence is sufficient to support the jury's findings that the confinement was not essentially incidental to the robbery and burglary and was significant enough to support an independent conviction for aggravated kidnapping. We note that the trial court properly instructed the jury that "unless you find beyond a reasonable doubt that the alleged victim's removal or confinement exceeded that which was necessary to accomplish the alleged [a]ggravated [r]obbery or [v]ehicular [b]urglary and was not essentially incidental to it, you must find the Defendant not guilty of kidnapping." The Defendant has not raised an issue about the propriety of the instruction the trial court gave, but the instructions are in accord with *White*. *Id*. at 580-81. The jury's verdict reflects that it found the Defendant's confinement of Mr. Scott beyond that necessary to accomplish the robbery and burglary. The Defendant is not entitled to relief on this basis.

## II. Sentencing

The Defendant contends that the trial court improperly sentenced him because the court misunderstood the extent of his prior criminal history. The Defendant also asserts that the court failed to apply mitigating factors. The State responds that the court did not

abuse its discretion.  We agree with the State.

At the sentencing hearing, the presentence report was received as an exhibit and reflected that the Defendant had previous convictions for reckless aggravated assault, misdemeanor drug possession, misdemeanor evading arrest, and violating the driver's license law.  The report showed that the Defendant received two years in confinement for the reckless aggravated assault conviction.

The presentence report reflected that the Defendant was age twenty-two.  The Defendant reported that he had completed the eleventh grade.  The Defendant reported that he had previously received treatment for attention deficit hyperactivity disorder and schizophrenia.  The Defendant began using alcohol at age sixteen, and drank a pint of whiskey during weekends when he was younger, but reported that he no longer consumed alcohol.  The Defendant reported that he began using marijuana at age fifteen and cocaine at age sixteen and that he used cocaine every weekend or "when he got mad at something."  The Defendant lived with his mother and his uncle.  Until his arrest, the Defendant had been employed at Waste Management.

The State argued that consecutive sentences were mandatory because the Defendant was on parole when the current offenses were committed.  Trial counsel argued that ordering consecutive sentences was not mandatory because the Defendant was on probation at the time of the offenses.  The trial court found as follows:

[A]t the time the felony was committed the Defendant was on probation [for misdemeanor drug possession] and he was on some form of – either on parole, determinate release, or some other type of release under the [direct] – supervision of some state authority, which would be for the parole or determinate release from [the reckless aggravated assault conviction].

The trial court considered the evidence presented at the trial and the sentencing hearing, the presentence report, the principles of sentencing, the arguments by the Defendant and the State regarding sentencing, the nature and characteristics of the criminal conduct involved, and the mitigating and enhancement factors.  The court found that the Defendant was a Range I, standard offender.  The Court found that mitigating factor (13) applied because the Defendant released Mr. Scott unharmed.  *See* T.C.A. §§ 40-35-113(13) (2014) ("Any other factor consistent with the purposes of this chapter."), 39-13-304(b)(2) ("If the offender voluntarily releases the victim alive . . . such actions shall be considered by the court as a mitigating factor at the time of sentencing.").

The trial court found that enhancement factor (1) applied.  *See* T.C.A. § 40-35-114(1) (2014) (amended 2015, 2016, 2017) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]").  The court found that enhancement factor (8) applied.  *See id*. §

-7-

40-35-114(8) ("The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community."). The court also found that enhancement factor (13) applied. *See id.* § 40-35-114(13)(A), (B). ("At the time the felony was committed, one (1) of the following classifications was applicable to the defendant: . . . (B) released on parole; (C) released on probation . . . .").

The trial court sentenced the Defendant to eleven months and twenty-nine days for facilitation of burglary of a vehicle, which was to be served concurrently with the aggravated robbery sentence. The court sentenced the Defendant to nine years for aggravated robbery and nine years for aggravated kidnapping. The court found that the Defendant was on probation at the time the offenses occurred and that he had an extensive criminal history. The court ordered consecutive service for the aggravated robbery and aggravated kidnapping sentences, for an effective eighteen-year sentence.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The record reflects that the trial court considered the appropriate purposes and principles of sentencing, including the applicable mitigating and enhancement factors. The court found the Defendant's releasing Mr. Scott unharmed was a mitigating factor. *See* T.C.A. § 40-35-113(13). The court's determination relative to the Defendant's prior criminal history and enhancement factor (1) is supported by the record. *See id.* § 40-35-114(1). The presentence report reflects that the Defendant had one felony and three

misdemeanor convictions. Relative to enhancement factors (8) and (13), the record reflects that the Defendant was on probation for two previous convictions at the time of the current offenses. *See id*. § 40-35-114(8), (13). The Defendant has not shown an abuse of discretion in the trial court's imposition of within-range sentences.

The sentencing range for a Class B felony for a Range I, standard offender is eight to twelve years. *See id*. § 40-35-112(a)(2) (2014). The Defendant was convicted of two Class B felonies and was sentenced to nine years for each felony. The Defendant's sentences were within the appropriate range, and the court's determinations are supported by the record. The record reflects that the court properly applied the purposes and principles of the Sentencing Act. The Defendant is not entitled to relief on this basis.

The trial court has the discretion to order consecutive sentences if the court finds by a preponderance of evidence that the defendant committed the offenses while on probation. *See id*. § 40-35-115(b)(6) (2014). The Defendant conceded during the sentencing hearing that the offenses were committed while he was on probation. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE